UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Joseph L., III,<br><br>                Plaintiff,<br><br>v.<br><br>Kilolo Kijakazi, Acting Commissioner of Social Security,<br><br>                Defendant. | Civil No. 3:22-CV-00183-TOF<br><br><br><br>February 1, 2023 |

## RULING ON PENDING MOTIONS

The Plaintiff, Joseph L., III,[1] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), that the Plaintiff was not disabled under the Social Security Act and was ineligible for Social Security Disability Insurance ("SSDI") benefits. (Compl., ECF No. 1.) The Plaintiff raises one issue on appeal, that the Administrative Law Judge ("ALJ") failed to properly consider Dr. Steven Weisman's opinion when determining the Plaintiff's residual functional capacity ("RFC"). (ECF No. 13-1, at 2.) According to the Plaintiff, the ALJ erroneously found Dr. Weisman's opinion to be minimally persuasive because the ALJ failed to consider two key factors in evaluating his opinion, its supportability and consistency. (*Id.* at 4).

The Commissioner argues that the ALJ's decision properly considered supportability and consistency, and that Dr. Weisman's own examination findings and other medical opinions provide substantial evidence supporting the decision to discount his opinion. (ECF No. 16-1, at 6-8.) After reviewing the administrative record and the parties' briefs supporting their motions, the Court

---

[1] Pursuant to the Court's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

concludes that substantial evidence supports the ALJ's RFC determination and finding of no disability. Therefore, the Plaintiff's Motion to Reverse the Commissioner's Decision (ECF No. 13-1) is **DENIED**, and the Commissioner's Motion for an Order Affirming the Commissioner's Decision (ECF No. 16-1) is **GRANTED**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff applied for SSDI benefits under Title II of the Social Security Act on July 26, 2018. (R. 228.) He claimed he was unable to work because of diabetes, carpal tunnel syndrome, degenerative knees, a bulging disc and rotator cuff tear, and high blood pressure. (R. 258.) He alleged a disability onset date of October 12, 2017. (*Id.*)

The Social Security Administration ("SSA") denied the Plaintiff's application for SSDI benefits on October 26, 2018. (R. 103.) The SSA considered reports from eight medical sources that had treated the Plaintiff, and it concluded that he was "not entitled to disability benefits based on the claim [he] filed." (*Id.*) The Plaintiff requested reconsideration of the SSA's decision, and his application for SSDI benefits was denied upon reconsideration on November 1, 2019. (R. 102.)

On January 3, 2020, the Plaintiff requested a hearing before an ALJ. (R. 116.) ALJ Ryan Alger then held a hearing on April 22, 2021. (R. 37.) The Plaintiff was represented by his attorney, Gabriel Hermann, and the ALJ also heard testimony from a Vocational Expert, Tanya Edghill. (*Id.*) The Plaintiff testified that he could not work due to bulging discs, back pain, a partially torn rotator cuff which causes "constant pain" in his left shoulder blade, and "bone on bone" arthritis in both knees. (R. 47-48.) He also explained that he has had a total of seven surgeries on his hands, including surgery on his index finger in 2018. (R. 46.) The 2018 surgery on his index finger did not go well and that finger is now "almost immobile." (*Id.*) Additionally, he discussed

how his sleep apnea and asthma limit his daily activity and leave him quickly and easily fatigued. (R. 50-51.)

The ALJ then issued his written decision on May 19, 2021, concluding that the Plaintiff was not disabled at any time from October 12, 2017, to the decision date. (R. 15-30.) Under the Social Security Act, the ALJ followed a five-step sequential process, described below in Section IV, to determine whether the Plaintiff was disabled.

At Step One, the ALJ found that the Plaintiff had engaged in substantial gainful activity in October 2017, from April 2019 to March 2020, and from September 2020 to December 2020. (R. 18.) During these periods, he worked as a heating systems technician and gas meter inspector. (*Id.*) Since there were twelve-month periods where the Plaintiff did not have substantial gainful activity, the ALJ moved to Step Two to determine if Plaintiff was disabled during those periods. *Id.*

At Step Two, the ALJ found that the Plaintiff's obesity, degenerative disc disease, bilateral knee osteoarthritis, and diabetes were severe impairments because they limited the Plaintiff's ability to perform work activities. (R. 19.) Since obesity can exacerbate the effects of other impairments, the ALJ stated that he considered the potential impact of the Plaintiff's obesity at all steps. *Id.* The ALJ found that the Plaintiff's right trigger finger and associated surgeries, obstructive sleep apnea, and asthma were not severe because they did not affect his ability to perform work activities. *Id.*

At Step Three, the ALJ found the Plaintiff's impairments were not equivalent to any impairment in the listings, 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 20.) The ALJ compared the Plaintiff's impairments to listing 1.15 (skeletal spine disorders compromising a nerve root), listing 1.18 (abnormality of a major joint in any extremity), and several listings in Section 9.00

(endocrine disorders). *Id.* He found that the Plaintiff's impairments did not meet any listings, though he did state that he would consider the effects of diabetes in determining the Plaintiff's RFC. *Id.*

At Step Four, the ALJ found that the Plaintiff had the RFC to perform light work. (R. 21.) The ALJ's RFC determination considered medical evidence on the Plaintiff's impairments from multiple sources and reports in the record. (R. 21-28.) Relying on the RFC to perform light work and vocational expert testimony, the ALJ found that the Plaintiff could perform his past relevant work as a gas meter inspector and a meter installer and remover. (R. 28-29.) Therefore, the ALJ did not proceed to step five, and concluded that the Plaintiff was not disabled between October 12, 2017, and May 19, 2021, and was not entitled to SSDI benefits. (R. 29-30.)

On July 15, 2021, the Plaintiff requested that the SSA Appeals Council review the ALJ's decision. (R. 5.) On December 3, 2021, the Appeals Council denied this request, making the ALJ's decision the final decision of the Commissioner. (R. 1-4.) The Plaintiff filed his complaint on February 1, 2022. (Compl., ECF No. 1.) The Commissioner answered the complaint by filing the certified administrative record on March 25, 2022. (ECF No. 6, *see also* Standing Scheduling Order, ECF No. 4, at 2 (stating that, in the District of Connecticut, the filing of the certified administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").) The Plaintiff filed a Motion to Reverse the Commissioner's Decision (ECF No. 13-1) on June 14, 2022, and the Commissioner filed a Motion for an Order Affirming the Commissioner's Decision (ECF No. 16-1) on August 12, 2022. The Plaintiff did not file a reply brief, and his time for doing so has expired. (*See* ECF No. 10.) The parties' motions are therefore ripe for decision.

## II.     STANDARD OF REVIEW

The Court reviews the Commissioner's decision for a lack of substantial evidence and for legal error. A court can "set aside the Commissioner's decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence." *Greek v. Colvin*, 802 F.3d 370, 374-75 (2d Cir. 2015). Substantial evidence is "relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022). The standard is deferential, and a court can only reject an ALJ's findings if no reasonable factfinder could have drawn the same conclusion. *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). If the ALJ offers one of several rational interpretations of the evidence, then his interpretation should be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

## III.    APPLICABLE LEGAL PRINCIPLES

An individual is only entitled to SSDI benefits if they have or had a disability. 20 C.F.R. § 404.315. This requires, among other things, that an individual "have a severe impairment(s) that makes [them] unable to do [their] past relevant work … or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 404.1505. Under the Social Security Act, an ALJ follows a five-step sequential process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). The process requires an ALJ to determine (1) whether the individual is engaged in substantial gainful activity; (2) whether the individual had a severe physical or mental impairment for a continuous period of twelve months; (3) whether the individual's impairment is equivalent to one listed in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) the individual's RFC and whether they can perform past relevant work; and (5) whether the individual can adjust to other work based on their RFC, age, education, and work experience. *Id.* If an individual is currently

completing substantial gainful activity or they have not had a severe impairment for a continuous period of twelve months, they are not disabled. *Id.* § 404.1520(b)-(c). If one of their impairments meets a listing in 20 C.F.R. § 404, Subpart P, Appendix 1, they are disabled. *Id.* § 404.1520(d). If their RFC indicates they can perform past relevant work or they can adjust to other work, they are not disabled. *Id.* § 404.1520(f)-(g). The Plaintiff bears the burden of proof in steps one through four, and the Commissioner bears the burden in step five. *Colgan*, 22 F.4th at 358.

ALJ's use relevant medical and other evidence to determine an individual's RFC. 20 C.F.R. § 404.1545(a)(3). As part of this process, an ALJ must analyze the persuasiveness of any medical opinions that they use in their decision. *Id.* § 404.1520c(b). The persuasiveness of a medical opinion is evaluated with respect to (1) its supportability; (2) its consistency; (3) the source's relationship with the claimant; (4) the source's specialization; and (5) other factors, such as the source's familiarity with other evidence in the record. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors and must explicitly be addressed by the ALJ. *Id.* § 404.1520c(b)(2). Supportability examines the "objective medical evidence and supporting explanations provided by a medical source … to support his or her medical opinion(s) . . . ." *Id.* § 404.1520c(c)(1). Consistency examines how "consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim . . . ." *Id.* § 404.1520c(c)(2).

## IV.   DISCUSSION

The Plaintiff raises a single issue on appeal. He argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ "failed to properly evaluate the consistency and supportability of consultative examiner, Dr. Weisman's opinion." (ECF No. 13-1, at 4.) Dr. Weisman examined the Plaintiff once, on August 23, 2019, and opined that the

Plaintiff could walk or stand for up to two hours in an eight-hour day; sit for up to four hours in an eight-hour day; and lift only ten pounds. (R. 527-28.) If these limitations were to be credited, the Plaintiff could not perform light work, which involves lifting twenty pounds, frequently lifting or carrying ten pounds, and a "good deal" of walking or standing. 20 C.F.R. § 404.1567(b). The ALJ found Dr. Weisman's opinion "minimally persuasive," reasoning that the opinion was inconsistent with both Dr. Weisman's own examination findings and the overall medical evidence. (R. 27.) In addition, the ALJ remarked that Dr. Weisman examined the Plaintiff on a single occasion and did not see treatment notes from the multiple medical sources in the record over time. (*Id.*)

### A. The ALJ Properly Considered the Supportability of Dr. Weisman's Opinion

The ALJ assessed the supportability of Dr. Weisman's opinion by comparing it to Dr. Weisman's own examination findings. (R. 27.) Discussing supportability requires an ALJ to "compare [the medical source's] opinion to [his] own objective medical evidence." *Coleman v. Kijakazi*, No. 3:20-cv-01588 (VLB), 2022 WL 766127, at *8 (D. Conn. Mar. 14, 2022). The Plaintiff first argues that the ALJ conflated supportability with consistency when he said that Dr. Weisman's assessment was "inconsistent with his own examination findings." (ECF No. 13-1, at 4-5.) But the Plaintiff has pointed to no authority for the proposition that an ALJ must be so exactingly careful with words. To the contrary, courts have been reluctant to impose rigid requirements on the language used in the supportability and consistency analyses, as long as the ALJ expressly relies on the proper regulations and demonstrates proper consideration of both factors in the decision. *See, e.g.*, *Kathleen K. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1160-EAW, 2022 WL 999686, at *4 (W.D.N.Y. Apr. 4, 2022); *John W. v. Kijakazi*, No. 5:20-cv-01180-BKS, 2022 WL 768672, at *13 (N.D.N.Y. Mar. 14, 2022). Therefore, the use of the word "inconsistent" in this context does not invalidate the ALJ's supportability analysis.

The key point is that the ALJ must compare the source's opinion with the source's own medical findings, and here, the ALJ did that. His analysis plainly considered the "objective medical evidence and supporting explanations presented by" Dr. Weisman, as called for by the regulations. 20 C.F.R. § 404.1520c. The ALJ noted that several of Dr. Weisman's findings conflicted with his recommended limitations on the Plaintiff's time spent sitting, standing, and walking. (R. 27.) Dr. Weisman found that the Plaintiff had normal and independent gait, 4/5 and 5/5 extremity strength ratings, the ability to dress and undress, the ability to pick up coins, the ability to make a fist, and the ability to button and unbutton clothing using both hands. (*Id.*) The ALJ described these findings that conflicted with Dr. Weisman's opinion as one of the primary reasons why the opinion was minimally persuasive. (*Id.*)

The Plaintiff contends that the ALJ ignored other of Dr. Weisman's other findings, creating a "fatal flaw" in the supportability analysis. (ECF No. 13-1, at 6.) But the ALJ did consider some of these findings in his decision. For instance, the Plaintiff claims the ALJ failed to consider Dr. Weisman's notes on decreased strength in his deltoid, biceps, triceps, wrists, and fingers (*id.*), but the ALJ considered these when he examined extremity strength ratings, and the 4/5 and 5/5 ratings suggest that the decreased strength was not a concern that would affect the Plaintiff's ability to work. (R. 27.) The ALJ also mentioned that the Plaintiff reported to Dr. Weisman decreased range of shoulder motion and pain in the knee, shoulder, and back. (R. 23-24.) The Plaintiff points to further findings in Dr. Weisman's opinion that the ALJ did not mention, such as bunions and decreased sensation in one hand, and claims that the ALJ is simply picking and choosing evidence that supports his own decision. (ECF No. 13-1, at 6.) However, there is no requirement that the ALJ explicitly address every conflicting piece of medical evidence. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). Instead, the ALJ highlighted those findings that led him to find Dr.

Weisman's opinion minimally persuasive, satisfying the requirement in 20 C.F.R. § 404.1520c that he explain how he determined the persuasiveness of medical evidence.

Substantial evidence supports the ALJ's finding that Dr. Weisman's opinion was minimally persuasive because several of Dr. Weisman's findings conflicted with his opinion.  While a single conflicting piece of evidence is sometimes insufficient to deem a medical opinion unsupportable, *see, e.g., Arlene P. v. Kijakazi*, No. 3:21-cv-00895-SRU, 2022 WL 16734548, at *4 (D. Conn. Sept. 7, 2022), in this case several examination findings conflicted with Dr. Weisman's opinion.  Even though there is evidence from the examination that supported Dr. Weisman's opinion, the record was not so one-sided as to deprive the ALJ's conclusion of substantial evidentiary support.

### B. The ALJ Properly Considered the Consistency of Dr. Weisman's Opinion

The ALJ appropriately assessed the consistency of Dr. Weisman's opinion by comparing it to evidence from other medical sources, concluding that the "overall evidence of record fails to support the walking, standing, lifting, carrying, postural and manipulative limitations Dr. Weisman purported."  (R. 27.)  Consistency measures how "consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources . . . ."  20 C.F.R. § 404.1520c(c)(2).  The ALJ's decision references fourteen exhibits from the Plaintiff's treating providers and statements from the Plaintiff himself that indicate that the Plaintiff had normal gait, intact coordination, 4/5 and 5/5 extremity strength, could sit comfortably in examination chairs, could make meals, could drive, and could shop in stores.  (R. 27.)  These findings from other sources also conflicted with Dr. Weisman's opinion that the Plaintiff needed to strictly limit his sitting, standing, and walking during the day.  The ALJ thus concluded that Dr. Weisman's opinion was not only inconsistent with his own findings but with other medical evidence in the record as well.  (*Id.*)

As with the supportability factor, the Plaintiff claims that the ALJ ignored a wealth of evidence supporting the consistency of Dr. Weisman's opinion, picking and choosing evidence that supports the decision. (ECF No. 13-1, at 7.) The Plaintiff points to several reports from medical sources concerning the Plaintiff's trigger finger diagnosis and hand surgeries, claiming the ALJ erroneously excluded them from the decision's reasoning. (*Id.* at 7-8.) But the ALJ's decision did mention the hand surgeries and both positive and negative post-surgery changes in the Plaintiff's ranges of motion and capabilities. (R. 19.) The ALJ also pointed to Dr. Weisman's findings that the plaintiff could pick up coins, dress himself, make a fist, and button or unbutton a shirt using both hands. (R. 27.) Indeed, Dr. Weisman concluded that the Plaintiff could frequently engage in manipulative activities. (R. 527.)

The Plaintiff also cites evidence related to his knee health, claiming that the ALJ improperly ignored this evidence in determining the consistency of Dr. Weisman's opinion. (ECF No. 13-1, at 8-9.) This evidence includes mild degenerative changes related to his knee osteoarthritis, a meniscal tear dating back to 2007, knee pain, a slight limp, reduced range of motion, recommendations for knee replacement, and bone-to-bone wearing by September 2020. (*Id.*) As with the evidence related to supportability, the ALJ did recognize evidence of the Plaintiff's knee conditions in his decision. (R. 22-26.) In fact, the ALJ used this evidence to find the opinions of state consultative examiners less persuasive when they suggested that the Plaintiff could perform more than light work. (R. 26.)

The Plaintiff claims that it is insufficient for the ALJ to just cite evidence, and that the ALJ must also articulate how he used evidence in his decision. (ECF No. 13-1, at 10.) But here, the ALJ explained that normal gait and 4-5/5 extremity strength were inconsistent with the limitations stated in the Weisman report. The Plaintiff may disagree with the ALJ's conclusion, but he cannot

plausibly claim that the ALJ did not clearly explain himself. In short, the ALJ properly followed the then-current regulations respecting evaluation of medical opinion evidence, and his decision was supported by substantial evidence. That being the case, the Court is obliged to affirm him.

## V. CONCLUSION

For the foregoing reasons, the ALJ's determination of the Plaintiff's RFC, and the ALJ's decision, was supported by substantial evidence and free from legal error. Accordingly, the Plaintiff's Motion to Reverse the Commissioner's Decision (ECF No. 13-1) is **DENIED**, and the Commissioner's Motion for an Order Affirming the Commissioner's Decision (ECF No. 16-1) is **GRANTED**.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. (ECF No. 14.) Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P 73(c). The Clerk of the Court is respectfully directed to enter judgment in favor of the defendant, and to close the case. It is so ordered.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge